846 F.2d 71
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
HOPGILKINSLOCK, INC., a Virginia Corporation, t/a Hopkins &
Gillock, Inc., Plaintiff-Appellant,
v.
McDEVITT & STREET COMPANY, Defendant-Appellee.
 No. 87-2663.
 United States Court of Appeals, Fourth Circuit.
 Argued April 6, 1988.
Decided May 13, 1988.
 
 Walter H. Peake, III (S.D. Roberts Moore, Gentry, Locke, Rakes & Moore on brief) for appellant.
 Mark E. Feldmann, Sr. (Robert A. Ziogas, Glenn, Flippin, Feldman & Darby on brief) for appellee.
 Before MURNAGHAN and CHAPMAN, Circuit Judges, and JOHN A. MacKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Plaintiff, Hopgilkinslock, Inc., the successor of G.J. Hopkins, Inc. ("Hopkins") appeals from the order of summary judgment dismissing its amended complaint against McDevitt & Street Company ("McDevitt"). The district court found that under North Carolina law, a valid accord and satisfaction barred Hopkins' action for breach of contract. We affirm.
 
 
 2
 This dispute arose out of a June 1983 subcontract agreement between Hopkins, a Virginia corporation specializing in mechanical, electrical and plumbing contracting, and McDevitt, a Florida corporation operating in North Carolina and specializing in general contracting. By the terms of the subcontract, Hopkins agreed to perform certain work in the construction of the Winston Plaza Hotel, Winston-Salem, North Carolina, for a guaranteed maximum price of $3,921,000. In its amended complaint, Hopkins claims that McDevitt breached various duties under the subcontract, causing Hopkins to experience cost overruns and ultimately, a loss on the subcontracted work.
 
 
 3
 Nevertheless, on McDevitt's motion for summary judgment, the district court found that at a meeting in August of 1984, the parties had agreed upon and settled Hopkins' cost overrun claims. At that meeting, McDevitt agreed to accept several new change orders and invoices from Hopkins, which resulted in an elevated adjusted subcontract price of approximately $4,725,000. In accord with the August settlement, on November 7, 1984, Hopkins accepted an initial payment of $513,948 on the unpaid balance.
 
 
 4
 On December 10, 1984, Hopkins submitted an application for the final payment of $114,515. At that time, however, Hopkins was still performing work under the subcontract, and McDevitt held this sum as retainage until April of 1985, when it was finally agreed between the parties that Hopkins' work was complete. On April 8, 1985, McDevitt sent Hopkins a final lien waiver, which, pursuant to the subcontract, was to be executed by Hopkins prior to final payment. Hopkins refused to sign the lien waiver, and this suit followed.
 
 
 5
 The record before us supports the district court's finding that at the August 1984 meeting an agreement resulted in an accord and satisfaction of Hopkins' claims, and we affirm the district court. On appeal, Hopkins argues that McDevitt breached the accord by not paying the outstanding balance "immediately." Assuming that prompt payment was an understanding of the accord, no specific payment dates were ever set, and we cannot say that McDevitt failed to make prompt payment. It appears that the November 7, 1984 payment of $513,948 was made only three weeks after Hopkins requested payment on the corresponding change orders. Hopkins accepted the sum with no objection. The final payment of $114,515, representing less than 3% of the total subcontract price, was held under terms of the subcontract which provided for a 10% retainage. McDevitt sent the lien waiver, a precondition for final payment, only four days after the parties agreed that work was complete and the final amount was due.
 
 
 6
 Hopkins argues in the alternative that any settlement which arose out of the August 1984 meeting should be invalidated for fraud and economic duress. These arguments are also without merit. Hopkins claims that it agreed to the adjusted contract price only after representatives of McDevitt allegedly threatened to keep any litigation over the matter in the courts for three years. Under North Carolina law, such a statement does not amount to duress. See Link v. Link, 278 N.C. 181, 179 S.E.2d 697 (1971); Stewart v. Stewart, 300 S.E.2d 263 (N.C.App.1983); Helena Chemical Company v. Rivenbark, 263 S.E.2d 305 (N.C.App.1980). "[T]he threat to institute legal proceedings, criminal or civil, which might be justifiable, per se, becomes wrongful ... if made with the corrupt intent to coerce a transaction grossly unfair to the victim and not related to the subject of such proceedings." Link, 179 S.E.2d at 705. McDevitt's alleged threat was not a threat to institute legal proceedings, but rather to defend against such proceedings. Furthermore, the legal proceedings in question were directly related to the disputed transaction.
 
 
 7
 Finally, Hopkins contends that McDevitt fraudulently induced it into entering the settlement by concealing a first, and more favorable, report prepared by a consulting firm retained by McDevitt for the purpose of recommending a new subcontract price. When the parties met in August of 1984, Hopkins was shown a second, less favorable report. Hopkins, however, has admitted that it knew of the earlier report and its more favorable language when it agreed to the adjusted subcontract price. We agree with the district court that this knowledge bars any claim of fraud.
 
 
 8
 Accordingly, the judgment of the district court is
 
 
 9
 AFFIRMED.